UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF WISCONSIN

**RICHARD LANSING,**

        **Plaintiff,**

        v.

**YEARLY RETIREMENT BENEFIT CHECK
FUND OF PLUMBERS UNION LOCAL 75, et al.,**

        **Defendants.**

**BEFORE THE HONORABLE
CHARLES N. CLEVERT, JR.**

**Case No. 08-C-0240**

**REPLY BRIEF IN SUPPORT OF THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**
_____

### I. Introduction.

Lansing has opposed the defendants' motion for summary judgment relying on two central and incorrect propositions of law. First, Lansing argues that union officials violate their fiduciary duty by complying with federal labor law and the union's constitution, if the compliance is caused by their own personal interests and beliefs, rather than a desire to comply with law and the union's constitution. Lansing's argument is not supported by any relevant case law, and is directly contradicted by the requirement of 29 U.S.C. §501 that union officials expend union monies (regardless of motivation) only if in compliance with the union constitution. Under Lansing's theory, union officers could only refuse to implement an unlawful dues increase if they were motivated by a desire to comply with the law, even if their implementation of the dues increase violates federal civil and criminal laws.

1

Second, Lansing argues that an election held using procedures that violate federal labor laws should be upheld, if incumbent union officials would benefit from setting aside the election. Lansing's argument ignores the fact that a dues vote held using procedures that violate 29 U.S.C. §411 is per se invalid, as well as the absence of any evidence showing that the defendants intentionally violated §411 for the purpose of sabotaging the election.

Since both of Lansing's central legal arguments fail, the Court should grant the defendants' motion for summary judgment, and dismiss all of Lansing's claims with prejudice.

## II. Argument.

1. <u>The Court Cannot Require Union Officials to Ignore the Union Constitution and Federal Labor Law</u>.

29 U.S.C. §501(a) in relevant part requires union officials to:

> Hold its (the union's) money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder.

Union officials breach their fiduciary duties in handling the union's money and property, unless their actions are consistent with a genuine interpretation of the union's constitution. *Noble v. Sombretto*, 525 F. 3d 1230, 1238-1239 (D.C. Cir. 2008); *Serpico v. Laborers International Union*, 97 F. 3d 995, 999 (7th Cir. 1997). Similarly, union officials breach their fiduciary duty by giving effect to a resolution for a dues increase that was adopted in violation of federal labor law requirements. *Barnes v. Sanzo*, 680 F. 2d 3, 4 (2nd Cir. 1982); *Highway Truck Drivers v. Cohen*, 182 F. Supp. 608 (E.D. PA. 1960).

2

Therefore, regardless of union officials' subjective motivation, they violate their fiduciary duties under §501 by complying with a resolution that either violated the union's constitution or was adopted using a procedure that violated federal labor law. Complying with federal labor law and the union's constitution therefore should create a safe harbor that protects union officials from a breach of fiduciary duty charge because otherwise union officials would face a scenario whereby they violate §501 regardless of the course of conduct they chose. *Operative Plasterers v. Benjamin*, 843 F. Supp. 1267, 1273 (N.D. IN. 1993) (Compliance with the union constitution is a shield from §501 liability); *Glover v. Chicago Truck Drivers' Union*, 1993 U.S. Dist. Lexis 13529 *20 (N.D. IL. 1993) (Court should evaluate whether the union official acted in good faith, only after it concludes that the official's conduct violated the union constitution).

Lansing has failed to cite to any authority holding that a court may require union officials to comply with the results of a vote that was conducted in violation of federal labor law, on the ground that the union officials did not comply with the voting results because of their personal beliefs, rather than because of their desire to comply with federal labor law. Lansing has also failed to cite to any relevant authority holding that courts can require union officials to violate the union constitution, when the union officials acted out of their personal beliefs, rather than a desire to comply with the union constitution. The duty of fair representation cases cited by Lansing, *Ramey v. Machinists District 141*, 378 F. 3d 269 (2nd Cir. 2004) and *Addington v. Airline Pilots Ass'n*, 2009 WL 2169164 (D. AZ. 2009), are inapposite because the duty of fair representation requires a union to refrain from arbitrary, discriminatory, *and* bad faith conduct. *Vaca v. Sipes*, 386 U.S. 171, 191 (1967). In other words, inquiry into the

3

union's subjective motivation is relevant in a duty of fair representation case, because even non-arbitrary and reasonable conduct by the union breaches the duty, if undertaken in bad faith. No language in 29 U.S.C. §501 permits a similar inquiry into the union's subjective motivations.

Lansing's citation to *Local 48 v. United Brotherhood of Carpenters*, 920 F. 2d 1047, 1052 (1st Cir. 1990) is similarly inapposite. In that case, the First Circuit ruled that the union's interpretation of its own constitution must be upheld, unless it is patently unreasonable. The Court then further articulated the "patently unreasonable test":

> …the critical question, uniformly, is whether the stated reason for the action was facially sufficient under the instrument of governance, or put another way, whether there was arguable authority for the officer's act from the officer's viewpoint at the time.

920 F. 2d at 1052, *citing Stetting v. Electrical Workers*, 587 F. 2d 1379, 1389 (9th Cir. 1978). In other words, the court should take the reason for its action that the union stated during the course of the litigation, and analyze whether there was arguable authority for the union's stated justification, at the time of union decision making. The "officer's viewpoint at the time" language was designed to require the court to adopt the union official's perspective, rather than its own sophisticated hindsight, in analyzing whether the union's stated reason was patently unreasonable. *Stetting,* 587 F. 2d at 1389. The "arguable authority" articulation of the "patently unreasonable" test is plainly caution against judicial interference into internal union decision making. No court has, and Lansing does not cite any case law, in which the court used the 'arguable authority" language as a basis for second guessing union decision making that complied with the union constitution, on the ground that the union officials acted out of improper motives.

4

The last case cited by Lansing, *Mason Tenders v. Laborers International Union,* 924 F. Supp. 528, 546 (S.D. N.Y. 1996), merely upheld the decision of an international union tribunal on the ground that it was supported by some evidence. The court did not conduct, and did not state any language authorizing an inquiry into the union's subjective motivation for its decision making.

Indeed, if Lansing's argument is correct, then a court may order union officials to implement a resolution in violation of the union's constitution, if the officials had an improper motive for initially not implementing the resolution. Such a court order would require union officials to violate §501, which requires the officials to comply with the union's constitution in holding, managing, investing, and expending the union's money and property. Since a court cannot order a party to violate federal law, Lansing's argument should be rejected.

      2.    <u>The Defendants Relied Upon a Reasonable Interpretation of the Local 75 Constitution to not Implement the Dues Checkoff</u>.

          a.    <u>Union Officials in Good Faith Declined to Implement the Dues Checkoff.</u>

In both his deposition and affidavit, Kreuser stated that as the primary officer responsible for implementing the 13th check motion, he did not implement the dues checkoff portion of the motion because there was no fund listed in the Local 75 Constitution to place the checked off dues into. (Proposed Findings of Fact, ¶30; Kreuser Dep. Pg. 50; Kreuser Aff. ¶10) Taken at face value, Kreuser did not implement the check off portion of the 13th check motion in good faith and because he believed the implementation was prohibited by the union constitution. Lansing has failed to create a material dispute over Kreuser's good faith/real reasons for not implementing the dues checkoff portion of the 13th check motion.

5

While Lansing claims the defendants were hostile to retirees, opposed to retirees' voting on the motion, and opposed the 13th check motion, he has not produced any evidence that the alleged hostility affected the defendants' decision making in attempting to implement the 13th check motion. Lansing has therefore failed to create a material dispute of facts over the defendants' good faith in attempting to implement the motion. *Rand v. CF Industries*, 42 F.3d 1139, 1146-1147 (7th Cir. 1995); *Konen v. IBT*, 255 F. 3d 402, 408 (7th Cir. 2001); *McKelvin v. E.J. Brach Corp.*, 124 F. 3d 864, 868 (7th Cir. 1997) (Both holding a court cannot infer union processed grievance in bad faith, absent evidence that admitted personal hostility between union official and grievant affected union decision making); *Rupe v. Spector Freight Systems*, 679 F. 2d 685, 692 (7th Cir. 1982) (Cannot infer union processed grievance in bad faith from its stated belief the grievance lacked merit).

In fact, the defendants did attempt to implement the 13th check motion: They moved for the pension fund to pay a 13th pension check to Local 75 retirees, and voted in favor of the pension fund accepting the required contributions and paying the 13th check to retirees, because working through the pension fund would not require a dues checkoff in violation of the Local 75 Constitution. Similarly, Local 75 approached the Contractors Association about setting up a separate fund to pay a 13th check to retirees, even though the motion did not require it to explore the possibility of setting up a joint labor-management fund to pay the 13th check.[1] The defendants' went beyond the

---

[1] Lansing misconstrues the record, when he argued that Kreuser and the defendants believed that the Taft-Hartley Fund was a part of the 13th check motion. Rather, even after the pension fund portion of the 13th check motion had failed, and Kreuser had determined that the dues checkoff portion of the 13th check motion could not be implemented, Kreuser nonetheless attempted to comply with the wishes of the membership by approaching the contractors' association about setting up a separate fund to pay for the 13th check. (Kreuser Dep. Pg. 46-47)

6

requirements of the 13th check motion in an attempt to secure a 13th pension check for retirees and in good faith attempted to implement the motion.

      b.     <u>The Court Should Uphold Local 75's Interpretation of its Constitution</u>.

The Seventh Circuit's decision in *Serpico,* 97 F. 3d at 998-999, defines the standard the court should apply in reviewing Local 75's interpretation of its own Constitution. Local 75's interpretation of its constitution should be subject to the deferential review and be upheld so long as it represents genuine interpretation of the union's constitution that reasonable and honest interpreters could agree with. *Serpico*, 97 F.3d at 999.

Section 5.2(b) of the Bylaws plainly states: "the hourly dues checkoff amount will be determined using the following formula . . . ", thus supporting the conclusion that Local 75 can only check off dues listed in the formula. Since the formula only includes the per capita tax, a rate calculated based on two times the hourly rate, and contributions to funds listed in Section 5.2(c) of the Constitution, the defendants properly concluded that dues could not be checked off for funds not listed in Section 5.2(c) of the Constitution.[2] The Court should uphold the defendants' interpretation since it is a reasonable interpretation of the Local 75 Constitution.

Lansing's argument against Local 75's interpretation relying upon past practice similarly fails. Neither the 1983 nor the 1989 Local 75 Constitution limited the types of dues that Local 75 could checkoff. (Lansing Aff. Ex. 1, 2) The Constitutional language that defined the dues Local 75 could check off, which prohibited Local 75 from checking

---

[2] In his deposition, Lansing concedes that the checkoff portion of the 13th check motion created a dues increase. (Lansing Dep. Pg. 24) A dues increase, by definition, is mandatory and must be paid by all members of Local 75. The Court should therefore reject Lansing's argument that the checkoff portion of the 13th check motion did not call for a dues increase or involved a voluntary dues increase.

7

off dues for additional dues without amending its Constitution, at the earliest came into the Constitution during the 1999 Amendment. (Breitlow Dep. Ex. 4, pg. 2) Similarly, the "dues checkoff" for the Market Recovery Fund was adopted by a higher union body, the Wisconsin Pipe Trades Association, and was required of all Wisconsin Pipe Trades locals. (Breitlow Aff. ¶¶2-3 attached hereto.) As the court recognized in *Serpico*, there may be multiple possible interpretations of the union constitution that pass muster so long as the interpretation is reasonable, the Court's inquiry ends.

Since the defendants' actions are based on a reasonable interpretation of the Local 75 Constitution, the Court should uphold this conclusion that they could not check off dues to fund the 13th check because the Fund was not listed in Local 75's bylaws. Contrary to Lansing, the Court should not inquire into defendants' subjective motivation. To do so would make the reasonable interpretation standard meaningless.

3. <u>The 13th Check Motion was Passed in Violation of the Secret Ballot and Timely Notice Provisions of the LMRDA and the Plumbers Constitution.</u>

While Lansing claims that under one account of events the vote for the 13th ballot complied with the secret ballot requirements of the LMRDA, he does not identify which account he is referring to, and does not explain how that account complied with secret ballot requirements of §411. Since Lansing does cite to his own deposition testimony in his brief, he is presumably claiming that under his own account the vote for the 13th ballot complied with secret ballot requirements. Under Lansing's account, voters grabbed the ballots from the dais, walked to a hallway, and were free to mark their ballots anywhere they wanted, before dropping the ballots into a ballot box. (Proposed Findings of Fact, ¶24; Lansing Dep. Pg. 91-92) Lansing does not dispute that after receiving the ballots from the dais, other voters such as Ligocki marked their ballots in

8

the open, where other people could see how they voted. (Proposed Findings of Fact, ¶24; Ligocki Dep. Pg. 58-59) The secret ballot requirements of the LMRDA are violated when a union distributes ballots to the membership, and then permits the members to mark their ballots in public or in private as they wished. *Donovan v. Graphic Arts Union Local 518*, 1984 U.S. Dist. Lexis 24559 slip op. at 20-22 (C.D. IL. 1984). Indeed, the voters enjoyed more privacy in *Donovan*, since they had time to take the ballots home to mark them. Moreover, the secret ballot requirements are violated, even when no voters testified that they saw how others voted. *Myers v. Hoisting & Portable Local 513*, 653 F. Supp. 500, 510 (E.D. MO. 1987).

On the issue of whether the members received adequate notice of a vote upon a dues increase, Lansing concedes that the key issue is whether the employees had notice of intent to vote upon a dues increase. *Gates v. Dalton*, 441 F. Supp. 760, 763 (E.D. N.Y. 1977). There is no dispute that the meeting notices only notified the membership that they may vote "for money out of your raise to be used to improve current pension benefits for all retirees." (Stipulated Facts, ¶20) There is also no dispute that when the union negotiates a raise for its membership, the membership may vote to use part of the raise to make a benefit purchase, which would be paid by the employer to the fund on a pre-tax basis. (Proposed findings of Fact, ¶13; Lansing Dep. Pg. 21) Finally, Lansing does not dispute that unlike a pre-tax benefit purchase, dues are deducted from employees' paychecks after taxes. (Proposed Findings of Fact, ¶6, 8; Ligocki Dep. Pg. 20; Kreuser Aff. ¶5)

Therefore, when the meeting notice refers to "money out of your raise", that is clearly referring to using a part of the raise to make a pension benefit purchase, rather

9

than a dues increase. Therefore, the meeting notice does not inform employees that during the meeting they may vote upon a dues increase, which as an after-tax deduction will cost them more money out of pocket than a pre-tax pension purchase. Regardless of the subjective beliefs of three union retirees, a dues increase and a pension purchase are not synonymous, because a dues increase requires a greater financial sacrifice by the voting membership. The notices for the May 24, 2005 membership meeting were inadequate, because they failed to put the membership on notice that they would vote on an after-taxes dues increase during the meeting.

The Court should reject Lansing's argument that the violations of the advanced notice and secret ballot requirements should be excused, because the defendants were the union officials in charge of the vote. The parties do not dispute that the present controversy concerns a dues increase rather than a union election, so that it is governed by Title I (29 U.S.C. §411), rather than Title IV (29 U.S.C. §481 et. seq.) of the LMRDA. The only case cited by Lansing to justify excusing the advanced notice and secret ballot violations, *Marshall v. Steel Workers Local 1010*, 664 F. 2d 144 (7th Cir. 1981), was a union election case governed by Title IV of the LMRDA; and therefore is not applicable to the case at bar, which involved a union dues election conducted in violation of Title I of the LMRDA. *Commer v. District Council 37*, 990 F. Supp. 311, 321 (S.D. N.Y. 1998). More generally, while the setting aside of elections under Title IV of the LMRDA is discretionary and governed by equitable principles, *see Marshall*, 664 F. 2d at 149; setting aside elections for violating Title I of the LMRDA is mandatory. *Risler v. Airline Employees Association*, 633 F. Supp. 732, 737-738 (D. Minn. 1985); *White v. King*, 319 F. Supp. 122, 125 (E.D. LA. 1970). The 13th check motion, adopted in

violation of the advanced notice and secret ballot requirements of §411, is therefore per se invalid and unenforceable.

Moreover, the Seventh Circuit in *Marshall* was careful in stating that violations of Title IV of the LMRDA should be ignored, only when the incumbents violated Title IV for the purpose of sabotaging the election. *Marshall*, 664 F. 2d at 152. *See also Donovan v. Washington Teachers Union Local 6*, 747 F. 2d 711, 716-717 (D.C. Cir. 1984) (Applying *Marshall* to hold that an election should be set aside, because the challenger failed to prove that the incumbents' violation of Title IV of the LMRDA were intentional). Applying the intentional misconduct standard, the 13th check motion's failure to give the membership advanced notice of a dues increase vote clearly cannot be excused: There is no evidence that the defendants knew the 13th check motion included a dues increase component, at the time they prepared the meeting notices. (Proposed Findings of Fact ¶17; Kreuser Dep., pg. 27-30) The defendants cannot prepare a meeting notice announcing a vote upon a dues increase, when they did not know a dues increase would come up during the meeting.

Similarly, despite taking the depositions of every major defendant, Lansing has failed to identify any evidence showing that the defendants knew in advance that the 13th check vote was a dues increase requiring a secret ballot or what the secret ballot requirement entailed. The defendants did not violate the secret ballot requirements for the purpose of sabotaging the vote, so that even under Title IV caselaw the vote on the 13th check motion should be set aside. *Rand,* 42 F. 3d at 1146-1147 (7th Cir. 1995) (Burden is on party opposing summary judgment to point to evidence demonstrating a material dispute of facts on the issue of intent).

11

### 4. Lansing's Complaint Cannot State a Claim for Breach of Fiduciary Duty in the Seventh Circuit.

In *Lux v. Blackman*, 546 F. 2d 713, 717-718 (7th Cir. 1976), the court held that the fairness of the removal of union officers did not implicate §501(a) of the LMRDA, because it did not concern financial mismanagement or misappropriation. The court then cited to Second Circuit decisions such as *Gurton v. Arons*, 339 F. 2d 371, 375 (2nd Cir. 1964), which held that the reach of §501 is limited to financial mismanagement or misappropriation. District courts in the Seventh Circuit have read *Lux* as adopting *Gurton* as the law of the Seventh Circuit. *Hill v. Marine Association of Chicago*, 1985 U.S. Dist. lexis 13348 *5 (N.D. IL. 1985). The case cited by Lansing, *Hood v. Journeymen Barbers*, 454 F. 2d 1347, 1354 (7th Cir. 1972) supports the above conclusion by holding that §501, which was drafted to address the misuse of union funds and property by union officials, applied to union officials' mismanagement of the monies of a pension fund.

In *Chathas v. IBEW Local 134*, 233 F. 3d 508, 514 (7th Cir. 2000), the court held that in addition to fiscal mismanagement or misappropriation, §501 also applied to conduct by union officials that is prohibited by the plain wording of the statute including dealing with the union as an adverse party and obtaining a personal interest adverse to the union. *Chathas* represents the most recent and binding pronouncement by the Seventh Circuit as to the scope of §501.

The Court should reject Lansing's argument that the defendants, by refusing to implement the dues checkoff component of the 13th check motion, assumed a position adverse to that of the union. The Seventh Circuit cases cited by Lansing do not support his conclusion: *Serpico*, 97 F. 3d at 999 held union officials did not breach their

12

fiduciary duty by removing several union officers, but did not interpret what constituted dealing adversely with the union. *Chathas* held that a union officer assumed a position adverse to the union by accepting monies from the employer and potentially creating a conflict of interest when the union officials have to deal with the employer in labor relations matters. *Chathas*, 233 F. 3d at 514. *Chathas* is thus easily distinguishable on the facts from the case at bar, which does not involve the creation of a potential conflict of interest in the union officials' dealings with the employer.

As argued above, even assuming the defendants were hostile towards retirees and/or did not agree with the motion to provide a 13th check for retirees, there is no evidence that once the motion for the 13th check passed, the defendants (or specifically Kreuser, who was primarily responsible for implementing the motion) allowed their personal feelings to interfere with their attempts to carry out the will of the membership. Kreuser indeed went beyond the call of duty by contacting both union counsel and the contractors association about the possibility of setting up a Taft-Hartley Fund to pay a 13th pension check to Local 75 retirees, even though the 13th check motion did not require him to do so.

Lansing also has failed to allege in his complaint a valid claim that the defendants misappropriated union monies. The cases cited by Lansing do not impose a fiduciary obligation upon union officials to engage in fund raising. In *Agola v. Hagner*, 556 F. Supp. 296, 299-300 (E.D. N.Y. 1982), the union had the money it needed to pay strike benefits, but refused to do so. The case therefore dealt with a union's refusal to spend monies already in its possession, rather than its refusal to engage in fund raising. The other case cited by Lansing, *Tile Cutters International Union v. Local 25*, 972 F. 2d

13

738, 746 (7th Cir. 1992), dealt with the issue of whether moneys paid to a mortuary fund are subject to a trusteeship imposed by the international union, and had nothing to do with the scope of union officials' fiduciary duty under §501.

Rather, in analyzing the scope of §501 the court should focus on the plain language of the statute, which imposes standards of conduct upon union officials to hold, manage, invest, and expend union money and property. All four actions referred to by the statute refer to money already in the union's possession, rather than a union's refusal to engage in fund raising. Since the defendants were never in possession of the monies needed to pay the 13th benefit check for the retirees, they could not mismanage, misappropriate, or refuse to expend money that they did not have.

Lansing's complaint has therefore failed to state a valid claim under §501.

### III. Conclusion.

For the above stated reasons, the defendants' motion for summary judgment should be granted in its entirety.

Dated this 2nd day of December, 2009.

s/Matthew R. Robbins
Matthew R. Robbins, WI Bar 1016672
mrr@previant.com
Frank G. Locante , WI Bar 1008856
fgl@previant.com
Yingtao Ho, WI Bar 1045418
yh@previant.co.
Previant, Goldberg, Uelmen,
 Gratz, Miller & Brueggeman, S.C.
1555 N. RiverCenter Drive #202
Milwaukee, WI 53212
PH: 414/271-4500; FAX: 414/271-6308
Attorneys for Defendants

s:\docs\plu075\76182\m0362355.doc