UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

RICHARD LANSING,

        Plaintiff,

        v.                                 Case No. 08-C-0240

YEARLY RETIREMENT BENEFIT CHECK
FUND OF PLUMBERS UNION LOCAL 75,
HARRY KREUSER, STEVE BREITLOW,
SCOTT HAMILTON, THOMAS GASPERETTI,
BRIAN HOHNKE, ANDREW MCDONALD,
ALAN DOTZLER, VINCENT GALLO,
WES ZASTROW, KENNETH GREENING,
THOMAS KOLTON, DIRECTORS OF PLUMBERS
UNION LOCAL 75, MARK SCHRAM,
RALPH WITKOWIAK, FORMER MEMBERS OF THE
DIRECTORS OF PLUMBERS UNION LOCAL 75,

        Defendants.

---

DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. 42)

Richard Lansing ("Lansing"), a retired member of Yearly Retirement Benefit Check Fund of Plumbers Union Local 75 ("Local 75"), brought this suit against Local 75, its former and current business managers and its various former and current directors ( collectively "defendants"). Two of Lansing's three claims have been dismissed. (Doc. 23.) The remaining claim, brought under the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401 *et seq.*, asserts that defendants owed and breached a fiduciary duty to Lansing by failing to establish and fund the Yearly Retirement Benefit Check Fund ("13th Check Fund"). For the reasons set forth below, the defendants' motion for summary judgment will be granted.

## STANDARD OF REVIEW

Summary judgment is proper if the depositions, documents or electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials show that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating entitlement to summary judgment. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of a factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. To establish that a question of fact is "genuine," the nonmoving party must present specific and sufficient evidence that, if believed by a jury, would support a verdict in its favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249.

## STATEMENT OF FACTS

Local 75 is a labor organization within the meaning of 29 U.S.C. § 152(5) and is governed by the LMRDA. (Doc. 39 ¶ 1.) Local 75 must comply with its constitution and bylaws, (Doc. 39 ¶ 16), and as a member of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("UA"), Local 75 must abide by the UA constitution. (Doc. 39 ¶ 15.)

Lansing is a retired member of Local 75. (Doc. 39 ¶ 5.) He served as a business agent for Local 75 between 1974 and 1983, and as the business manager/financial secretary-treasurer of Local 75 between 1983 and 1995. (Doc. 39 ¶ 5.) With the intent of establishing a 13th Check Fund for retired union members, Lansing and Michael Ligocki, also a retired Local 75 member, drafted a 13th Check Motion (the "Motion). The motion proposed two potential funding mechanisms. (Doc. 39 ¶ 17.) The first called for funding the 13th Check though a benefit purchase for qualified retirees. The relevant part of the Motion states:

> That twenty cents per hour be allocated for a fully funded pension benefit purchase.
>
> This purchase will be for all Local 75 retirees. The benefit purchase shall be divided equally between retirees, payable as a 13th benefit check in December of each year to retirees who have been retired for a minimum of one (1) year.

(Doc. 39 ¶ 17.) This part of the Motion required the approval of the Pension Board. (Doc. 59 ¶ 12.)

The second mechanism proposed that Local 75 establish a depository, funded by its members through a voluntary checkoff system. (Doc. 43 at 6; Doc. 62 at 5.) The relevant part of the Motion states:

3

> If the pension fund trustees fail to approve a fully funded improvement for retirees, Local 75 will then establish a check off of twenty cents per hour for Local 75 pension fund retirees. The purpose of the fund will be to provide a 13th benefit check to all Local 75 pension fund retirees.
>
> The fund assets shall be divided equally between the retirees. Payable in December of each year to retirees who have been retired a minimum of one (1) year.

(Doc. 39 ¶ 17.)

Two announcements were mailed to the membership. Harry Kreuser, who was the business manager when the Motion was proposed, supervised the preparation and mailing of notices for the May 24, 2005, membership meeting. (Doc. 59 at 17.) The meeting notice stated in relevant part:

> This month's union meeting is a very important meeting to attend. We will be addressing the needs of each of our benefit funds and approving the final appropriations of monies out of our raise due on MAY 29, 2005.
>
> It is recommended that every member of Plumbers Local 75 make every effort to attend. An important issue will be the final decision on money appropriations into the Pension Fund. A SPECIAL REQUEST MAY BE MADE AND VOTED ON FOR MONEY OUT OF YOUR RAISE TO BE USED TO IMPROVE CURRENT PENSION BENEFITS FOR ALL RETIREES. IT IS HIGHLY RECOMMENDED YOU BE IN ATTENDANCE TO HEAR THIS PROPOSAL.

(Doc. 39 ¶ 20.) Additionally, the following announcement appeared in a newsletter sent to Local 75 members:

> At this month's meeting we will be voting on the distribution of the raise due May 29, 2005. The special flier that was sent out last week outlined the importance of attending this meeting. Your vote is your voice. Don't rely on someone else to speak for you.

(Doc. 39 ¶ 21.)

Ligocki read the Motion to the membership at the May 24, 2005, meeting. (Doc. 39 ¶ 22.) Kreuser challenged the motion, (Doc. 59 ¶ 43), and he was verbally belligerent to

4

Case 2:08-cv-00240-CNC   Filed 06/29/12   Page 4 of 11   Document 69

Lansing. (Doc. 59 ¶ 44.) One hundred forty-five members voted "yes," 100 voted "no," one abstained and the motion passed. (Doc 39 ¶ 23.) However, it is unclear how the vote was taken. The Pension Board did not vote in favor of benefits purchase when Kreuser presented the first part of the Motion to that body. Kreuser and Scott Redman were the only two trustees who voted in favor of the Motion. (Doc. 59 ¶ 29.)

Afterward, Kreuser took the Motion to Peter Lentz, Executive Director of the Plumbing and Mechanical Contractors Association of Milwaukee and Southeastern Wisconsin ("Contractors Association"), with whom Local 75 has a collective bargaining agreement. (Doc. 59 ¶¶ 7, 32.) Although the Motion did not address creation of a joint fund, Kreuser and Lentz discussed setting up the 13th Check Fund as a Taft-Hartley Fund.[1] (Doc. 59 ¶¶ 8, 32) (Doc. 59 ¶¶ 32.) Ultimately, Lentz and the Contractors Association refused to create the separate fund. (*Id.*) Kreuser did not attempt to establish the 13th Check Fund under the second part of the Motion. (Doc. 59 ¶ 34.) Consequently, the 13th Check Fund was not established, and 20 cents per hour was not collected by Local 75 as proposed in Lansing's Motion. (*Id.*) ANALYSIS

Lansing asserts that defendants breached their fiduciary duties to him under Section 501 of the LMRDA by failing to establish a checkoff of twenty cents per hour and to provide 13th benefit check to retired members. Defendants move for summary judgment arguing that they did not breach a fiduciary duty to Lansing by failing to establish the 13th Check Fund because: 1) Local 75's bylaws prohibited the checking off of dues to funds not listed

---

[1] A Taft-Hartley Fund, such as Local 75's Health and Pension Funds, is, a fund created under the authority of § 302 of the Taft-Hartley Act, administered by an equal number of union and employer trustees, and funded by members' and employers' pre-tax contributions. (Doc. 59 ¶¶ 8, 32.)

5

therein; 2) the 13th Check Motion was adopted in violation of the notice and secrecy requirements within the LMRDA and the UA Constitution; and 3) LMRDA § 501 does not require union officials to comply with a membership resolution calling for a dues increase. After due consideration, the court finds that defendants were not required to establish the 13th Check Fund because its creation would violate Local 75's bylaws. Therefore, the court need not evaluate the alternative grounds for relief raised by defendants in their motion for summary judgment.

The Seventh Circuit Court of Appeals defers to a union's interpretation of its governing documents. *Fulk v. United Transp. Union*, 160 F.3d 405, 407 (7th Cir. 1999); *see also Air WI Pilots Protection Comm. v. Sanderson*, 909 F.2d 213, 218 (7th Cir. 1990). Hence, the union's interpretation should be upheld if it represents a genuine interpretation respecting which reasonable and honest interpreters could agree, *Serpico v. Laborers Int'l Union*, 97 F.3d 995 (7th Cir. 1997), and unless such interpretation is patently unreasonable, *Fulk*, 160 F.3d at 407-08. In addition, union officials may refuse to implement a resolution approved by the membership if its implementation would violate the union's governing documents. *Anderson v. Int'l Union*, 370 F.3d 542, 554-55 (6th Cir. 2005) *cert. denied*, 543 U.S. 1056.

Defendants interpret Local 75's bylaws to allow the union to check off dues only for funds listed in Section 5.2. The relevant parts of Section 5.2 state:

> (b) A per hour dues checkoff amount will be calculated and utilized to collect dues. The hourly dues checkoff amount will be determined by the following formula: The amount of monthly per capita tax payable to the [UA] plus two times the basic hourly rate divided by one hundred fifty-five (155) hours plus all payments included in paragraph 5.2(c).

> (c) Each active member of this local union shall make to the Financial Secretary / Treasurer / Business Manager, monthly, payments for the following, as authorized by the membership: Defense Fund, Building Maintenance Fund, Central Labor Assessments, Capitol Development Fund and Recreation / Recognition Fund.

Lansing offers an alternate interpretation. He claims that when he was the business manager of Local 75, he wrote specific funds into the bylaws so they could not be abolished absent an amendment. (Doc. 61 ¶ 6.) Moreover, Lansing submits that the funds listed in Local 75's bylaws do not prevent additional funds from being created. (Doc. 61 ¶ 7.) Unfortunately for Lansing, his interpretation is not entitled to deference. When analyzed in a light most favorable to the plaintiff, the court finds that Local 75's interpretation of Section 5.2 of its bylaws is reasonable and that it represents a genuine interpretation in which reasonable and honest interpreters could agree.

Defendants further assert that the 13th Check Fund could be established only if it was added to Section 5.2. Moreover, they maintain that adding the fund to the bylaws would have required an amendment.[2] Lastly, defendants submit that the 13th Check Fund is not listed in the bylaws and that Lansing has presented no evidence that the proposed fund was added in accordance with the amendment procedures set forth in Section 23.1 of the bylaws.

Deference to a union's interpretation of its governing documents is predicated on a federal policy of noninterference in internal union affairs. *Fulk*, 160 F.3d at 408 (citing *United Brotherhood of Carpenters & Joiners v. Sidell*, 552 F.2d 1250 (7th Cir. 1977)).

---

[2] Section 23.1 states the procedure for amending the bylaws: "The bylaws . . . shall not be altered or amended except by a vote of three-fourths of the members at the regular or special meeting called for that purpose, and all proposed amendments must be presented in writing, signed by three or more members in good standing, and be read at two (2) stated meetings before the same can be acted upon."

7

Notwithstanding such deference, "a union's action, though arguably authorized by, and not patently unreasonable under, its governing documents, may be blocked by the courts if undertaken in bad faith." *Local No. 48 United Brotherhood of Carpenters and Joiners of Am. v. United Brotherhood of Carpenters & Joiners of America*, 920 F.2d 1047, 1053 (1st Cir. 1990); *see generally Serpico v. Laborers Int'l Union*, 1996 U.S. Dist. LEXIS 1055 97 (N. Dist. Ill. 1996), aff'd 97 F.3d 995 (7th Cir. 1997). Furthermore,

> . . . the proper focus of judicial inquiry is on the reasonableness of the union's interpretation of its constitution at the time of the decision, not on a post hoc evaluation of the reasonableness of the underlying action. In other words, the critical question, uniformly, is whether the stated reason for the action was facially sufficient under the instrument of governance, or put another way, whether there was arguable authority for the officer's act from the officer's viewpoint at the time. . . .

*Sidell*, 920 F.2d at 1052 (internal citations omitted).

Notably, inferences of bad faith must be grounded on more than "flights of fancy, speculations, hunches, intuitions, or rumors [otherwise] 'discrimination law would be unmanageable if disgruntled employees . . . could defeat summary judgment by affidavits speculating about the defendant's motives.'" *Rand v. CF Indust., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) (citing *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655 (7th Cir. 1991). Therefore, where a complainant purports that a defendant's stated reasons for its action are unworthy of credence, "[t]he district court must [] make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir. 1989). *Rand*, 42 F.3d at 1146-47.

8

Despite defendants' claim that it refused to establish the 13th Check Fund in good faith, Lansing argues that the defendants' stated reasons are pretextual, evidencing bad faith. Interrogatory number one asked defendants to identify all facts supporting their contention that Lansing's Motion was not adopted in accordance with the LMRDA. (Doc. 60-4 at 44.) Initially, defendants stated that the Motion did not comply with LMRDA because it was "voted upon without the requisite amount of voter privacy . . . and that the membership did not receive adequate notice . . . ." (*Id.*) Defendants later amended their response adding that, "Section 5.2 of the Local 75 by-laws specifically defines what amounts may be included in the dues checkoff of active members, so that adding a checkoff for retiree pension benefits requires amending the bylaws." (Doc. 60-4 at 50.) Lansing asserts that amending their response to the interrogatory demonstrates that defendants' interpretation of Section 5.2 was an afterthought.

In response, defendants offer evidence that the union's interpretation was not an afterthought. Kreuser, prior to filing the law suit, knew that the second part of the motion could not be implemented, unless there was a constitutional amendment. (Doc. 51 at 13.) Furthermore, Lansing fails to raise a factual dispute as to whether the union's interpretation of its bylaws was a post-hoc rationalization of its actions, particularly he presents no evidence to support an inference that Kreuser did not know the motion could not be implemented well before the suite was lodged. Therefore, evaluating the evidence in a light most favorable to Lansing, the court finds that the defendants' evidence is persuasive. In other words, the amended interrogatories do not create a material factual dispute regarding Kreuser's interpretation of Section 5.2 during the relevant period.

9

Case 2:08-cv-00240-CNC   Filed 06/29/12   Page 9 of 11   Document 69

Regardless, Lansing further asserts that this court should disregard Local 75's interpretation of its bylaws because it has not adhered to its stated interpretation. In 1998, Local 75 established a dues checkoff to benefit a Market Recovery Program, an additional fund that did not appear in the 1989 version of the bylaws. (Doc. 61 ¶ 5.) However, defendants have shown that the dues assessment for the Market Recovery Program was adopted by the Wisconsin Pipe Trade Association (WPTA), which is an intermediate body of the UA. And, as an affiliate of WPTA, Local 75 is bound by its decisions. (Doc. 66-1 ¶ 2.) Thus, Lansing did not offer any evidence that Local 75 is not an affiliate of WPTA or that it is not bound by the decisions of that association. Moreover, he failed to proffer evidence directly contradicting the union's interpretation of Section 5.2 during the fifteen-plus year period from 1989 when specific funds first appeared in the bylaws and the filing of this suit in 2008.

Additionally, Lansing fails to call defendants' credibility into question such that a material fact respecting their credibility must be resolved at trial. Lansing submits that defendants failed to implement the 13th Check Motion out of hostility toward the retired members as a group and personal animus toward him. Also, he maintains that the defendants attempted to disenfranchise retired members by thwarting, and attempting to thwart, their voting rights. (Doc. 49 at 20.) Although Kreuser raised the issue of whether retired members could vote on the 13th Check Motion, it was ultimately decided that the retired members were allowed to vote, and they did so when the Motion was posed to the membership. Kreuser stated that he was not in favor of the Motion and apparently did not change his view after it was favorably voted upon. Yet, he said that he would pass it along but could not promise its implementation. (Doc. 54 at 59.) Nevertheless, he made several

efforts to establish the fund. Notably, Kreuser brought the first option under Lansing's Motion to the Pension Board where he was one of two trustees to vote for its establishment. (Doc. 59 at 16.) Indeed, upon his own initiative, Kreuser attempted to establish the 13th Check Fund through the Taft Hartley Fund. (Doc. 59 at 18.)

Considering the various steps taken to establish the 13th Check Fund and evaluating the evidence in a light most favorable to Lansing, defendants have established that they acted in good faith. Now, therefore,

IT IS ORDERED that defendants' motion for summary judgment (Doc. 42) is granted and the case is dismissed.

Dated at Milwaukee, Wisconsin, this 29th day of June, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE